■    SIXTA CENTENO, as Administratrix of the Estate of ABRAHAM CENTENO, Deceased, Appellant, v CITY OF NEW YORK, Respondent.— *Per Curiam:* The unfortunate suicide, for whose alleged wrongful death this action was brought by his administratrix, was permitted to leave the hospital wherein confined on the basis of the considered professional judgment of the attending psychiatrist that he would do better at home, in the

bosom of his family, with necessary medication administered on an outpatient basis. There is not an iota of evidence to indicate that his opinion was other than honest. It is therefore completely irrelevant that plaintiff-appellant's expert testified as is set forth in the dissent. Disagreement between professional experts does not in these circumstances provide the basis for a holding that a prima facie case of malpractice was presented requiring jury consideration. "The decision to release the patient from the hospital and place him on convalescent status was a medical judgment and the decision to continue him on convalescent outpatient status after February, 1955 and to discharge him in June were also matters of professional medical judgment. Although another physician might disagree as to the form and period of treatment to be followed, a liability would not arise; nor would it arise if the professional judgment to discharge him was in fact erroneous. *(St. George v. State of New York,* 283 App. Div. 245, affd. 308 N. Y. 681; *Warner v. Packer,* 139 App. Div. 207; *Pike v Honsinger,* 155 N. Y. 201.) The prediction of the future course of a mental illness is a professional judgment of high responsibility and in some instances it involves a measure of calculated risk. If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated. This is one of the medical and public risks which must be taken on balance, even though it may sometimes result in injury to the patient or others." (Bergan, J. in *Taig v State of New York,* 19 AD2d 182, 183.) The judgment in favor of defendant city on dismissal at the close of plaintiff's case should be affirmed, without costs. Nunez, J. (dissenting). Plaintiff's expert, a Diplomate of the American Board of Psychiatry and Neurology possessing outstanding qualifications as a practicing psychiatrist, testified that he had reviewed the decedent's Metropolitan and Bellevue Hospital records; that in his opinion the treatment afforded decedent was "incomplete, inadequate and thus completely wrong"; that the Bellevue Hospital chart indicated that the patient was possibly suicidal and was drug dependent. Under these circumstances it was his opinion that discharging this patient without prescribing medication was not in accord with the accepted medical practice and accepted psychiatric practice at the time the decedent was a patient in the defendant's hospital. It was further his opinion that, as had been done at the Metropolitan Hospital, this man should have received outpatient treatment by the visiting nurses and that since the decedent had demonstrated violent behavior and psychotic symptoms only three days prior to his discharge, he should have been kept in the hospital for a substantial period of time thereafter. It was further his opinion that the patient had not been properly treated. This medical expert's ultimate definite conclusion was that the decedent was not treated by proper and accepted medical practice. In my opinion the court erred in dismissing the complaint at the end of the entire case in the face of plaintiff's prima facie showing of negligence and malpractice. There was a prima facie showing that premature discharge and failure to provide for proper medication was the proximate cause of plaintiff's intestate's death. There was definite testimony by a qualified expert that the doctors at Bellevue Hospital did not follow the accepted medical practice in the field of psychiatry. Plaintiff should have been accorded the benefit of every favorable inference which could reasonably be drawn from the facts to sustain the expert's testimony and the complaint. *(Cook v Rezende,* 32 NY2d 596, 599; *Condomanolis v Boiler Repair Maintenance Co.,* 44 AD2d 366.) For a discussion of the general area of malpractice see *Toth v*

*Community Hosp. at Glen Cove* (22 NY2d 255), which holds in essence that a physician should use his best judgment and whatever superior knowledge, skill and intelligence he may have and that a specialist may be held liable where a general practitioner may not. In this case the psychiatrists at defendant's hospital should be held to the exercise of reasonable and ordinary care required of doctors specializing in psychiatry. If they are guilty of negligence or malpractice, their employer is liable for their actions. The case should have been submitted to the jury. I therefore dissent and vote for a reversal and a new trial. Markewich, J. P., Kupferman, Capozzoli and Yesawich, JJ., concur in *Per Curiam* opinion; Nunez, J., dissents in an opinion. Judgment, Supreme Court, New York County, entered on June 24, 1974, affirmed, without costs and without disbursements.