■ JOAN R. DAVIS et al., Respondents, v ELETHEA H. CALDWELL et al., Appellants. — Judgment affirmed, with costs. All concur, except Moule, J.,

who dissents and votes to reverse the judgment and grant a new trial in accordance with the following memorandum:

Moule, J. (dissenting). I must dissent and vote to reverse and grant a new trial on the issue of liability only, with the verdict on damages held in abeyance pending the new trial. In March, 1974 mammograms of plaintiff wife's breasts resulted in a diagnosis of calcifications in the breasts causing concern for carcinoma. In April, 1974 a doctor who had treated plaintiff wife for years performed a biopsy on both breasts; a small amount of cancer in the right breast was found and a mastectomy was recommended. Plaintiff wife refused to undergo the operation and, upon the advice of another doctor, underwent a period of watchful waiting. An additional mammogram taken in 1975 indicated no change, but one taken in 1976 showed six new calcification spots in the right breast and this result was discussed with both plaintiffs. Plaintiff wife was already considered to be a cancer risk; consequently, removal of the breast because of the propensity for calcification to change into cancer was recommended. The doctor who had performed the prior biopsies believed that plantiff wife had more cancer in her right breast and felt that a mastectomy was needed. However, because she still objected to such an operation, he considered a subcutaneous mastectomy adequate. This procedure, less radical than a complete mastectomy, consists of the removal of most of the breast tissue under the skin with preservation of the nipple and areola so that the breast form may be reconstructed with silicone implants. Both plaintiffs questioned this doctor carefully before agreeing to the procedure and before meeting with the defendant, Dr. Elethea H. Caldwell, to whom plaintiff wife was referred for the operation. On June 16, 1976 plaintiff wife entered defendant Strong Memorial Hospital for the removal of both breasts subcutaneously and placement of silicone implants which Dr. Caldwell performed the following day. After the surgery, pathological and X-ray studies were performed on portions of the breast tissue taken from plaintiff wife which indicated that the particular tissue examined was benign. However, there was evidence that the slides used in the pathology study were not sufficient in number to examine all of the tissue removed, and that they covered only 2 of the 6 calcification spots. Plaintiffs commenced this malpractice suit against defendants Dr. Caldwell and Strong Memorial Hospital. After denying defendants' motion to dismiss, the court instructed the jury on five different theories of liability: (1) the defendants made an erroneous diagnosis of cancer; (2) defendant Dr. Caldwell failed to perform a biopsy prior to performing a subcutaneous mastectomy; (3) defendant Dr. Caldwell unnecessarily operated on plaintiff wife; (4) defendant Dr. Caldwell failed to follow accepted standards of medical care; and (5) there was a lack of informed consent prior to the surgery. The jury returned a general verdict for plaintiffs in the sum of $60,725. The defendants, on appeal, contend that the court erred in submitting to the jury the first and third theories of liability. It is a fundamental rule of malpractice actions that, unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case *(Koehler v Schwartz,* 48 NY2d 807, 808; *530 East 89 Corp. v Unger,* 43 NY2d 776, 777; *McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 24; *Mulligan v Shuter,* 71 AD2d 669; *Morgan v State of New York,* 40 AD2d 891, affd 34 NY2d 709). Where a malpractice case is submitted to a jury on several theories of liability and a general verdict is rendered, all theories must be established by a prima facie case *(Ferrara v Leventhal,* 56 AD2d 490, 498; *Ward v Kovacs,* 55 AD2d 391, 395; *Schreiber v Cestari,* 40 AD2d 1025, 1026). At trial there was an absence of any expert

testimony on the first and third theories of liability. These theories of malpractice are not within the competence of a lay jury to evaluate without the assistance of expert testimony. None of the experts called by plaintiffs or defendants testified that the defendant had made an erroneous diagnosis concerning the disease in plaintiff wife's breasts, and there was no expert testimony that the operation was unnecessary. Plaintiffs' expert testified that he would have recommended a complete mastectomy in 1974 at the first indication of cancer and, while he personally would not have performed a subcutaneous mastectomy, he would not say that Dr. Caldwell's decision to do so was wrong. All of the other medical testimony unanimously supported the position that the subcutaneous mastectomy was necessary in view of plaintiff wife's refusal to have a complete mastectomy. Consequently, the trial court should not have submitted the first and third theories of liability to the jury. While plaintiffs did present expert testimony in support of the other three theories of liability, an improper charge on any of the theories upon which the verdict may have been predicated taints the entire verdict and renders a new trial necessary *(Ferrara v Leventhal,* 56 AD2d 490, *supra; Ward v Kovacs,* 55 AD2d 391, *supra).* Since defendants do not claim that the damages awarded to plaintiffs by the jury's verdict were excessive, the matter should be remitted for a new trial solely on the issue of liability. The existing verdict as to damages should be held in abeyance pending the new trial with prejudgment interest, if liability is found, to be computed as of such time *(La Rocco v Penn Cent. Transp. Co.,* 29 NY2d 666; *Schreiber v Cestari,* 40 AD2d 1025, 1027, *supra).* (Appeal from judgment of Monroe Supreme Court — medical malpractice.) Present — Dillon, P. J., Cardamone, Doerr and Moule, JJ.