Rosenblatt v Jungman Suh (2023 NY Slip Op 04223)

Rosenblatt v Jungman Suh

2023 NY Slip Op 04223

Decided on August 9, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOSEPH J. MALTESE
PAUL WOOTEN
BARRY E. WARHIT, JJ.

2019-13058
 (Index No. 713403/15)

[*1]Lois M. Rosenblatt, etc., et al., respondents,
v
Jungman Suh, etc., appellant, et al., defendants.

Vaslas, Lepowsky, Hauss & Danke, LLP (Jason Ginsberg and Mischel & Horn, P.C., New York, NY [Scott T. Horn and Lauren Bryant], of counsel), for appellant.
Kimm Law Firm, New York, NY (Michael S. Kimm of counsel), for respondents.

DECISION & ORDER
In an action to recover damages for medical malpractice and wrongful death, etc., the defendant Jungman Suh appeals from an order of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), dated October 4, 2019. The order, insofar as appealed from, denied that defendant's motion for summary judgment dismissing the complaint insofar as asserted against him.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and the motion of the defendant Jungman Suh for summary judgment dismissing the complaint insofar as asserted against him is granted.
The plaintiffs' decedent was treated by the defendant Jungman Suh, a medical doctor, for insomnia beginning in 2010. During her treatment, the decedent began suffering from auditory and visual hallucinations and paranoia. On January 5, 2014, the decedent committed suicide by hanging herself.
In December 2015, the plaintiffs commenced this action, inter alia, to recover damages for medical malpractice and wrongful death against Jungman Suh and the defendant Anthony Jung, who also treated the decedent, among others. As relevant to this appeal, the plaintiffs alleged, among other things, that Jungman Suh failed to properly assess and monitor the decedent for side effects of a medication, Zolpidem, that he prescribed her and "failed to provide protective measures to protect from suicidal behavior." Jungman Suh moved for summary judgment dismissing the complaint insofar as asserted against him. In an order dated October 4, 2019, the Supreme Court, inter alia, denied the motion. Jungman Suh appeals, and we reverse the order insofar as appealed from.
"'[T]o establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries'" (Coller v Habib, 185 AD3d 653, 654, quoting Stukas v Streiter, 83 AD3d 18, 23). Thus, "'a defendant physician seeking summary judgment must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby'" (Martinez v Orange Regional [*2]Med. Ctr., 203 AD3d 910, 912, quoting Stukas v Streiter, 83 AD3d at 24; see Oliver v New York City Health & Hosps. Corp., 178 AD3d 1057, 1058).
Here, Jungman Suh's submissions in support of his motion, including the decedent's toxicology report from the Office of the Chief Medical Examiner of the City of New York and an affidavit and an affirmation of his experts, were sufficient to establish, prima facie, that the alleged departures from accepted medical practice were not a proximate cause of the decedent's suicide (see generally Stucchio v Bikvan, 155 AD3d 666, 667). The toxicology report showed that, at the time of the decedent's death, in addition to Zolpidem (Ambien), which Jungman Suh prescribed, there were several other medications in the decedent's bloodstream that had never been prescribed by him, including Phenmetrazine, Fluoxetine (Prozac), and Lorazepam (Ativan), as well as ethanol (alcohol) and nicotine. Jungman Suh's expert neurologist, Joseph Yellin, and toxicologist, Richard Stripp, explained that Phenmetrazine is an amphetamine derivative that was withdrawn from the market in the United States in 1982 due to its potential for abuse and known side effects, including hallucinations, aggressive behavior, and nervousness. Stripp averred that Fluoxetine is known to increase the side effects of Phenmetrazine, and he opined that if medication played a roll in the decedent's suicide, it was the concentration of Phenmetrazine combined with the Fluoxetine that "more likely than not could have been a contributing factor to the [decedent's] suicide." Stripp further opined, within a reasonable degree of scientific certainty, that the concentration of Ambien found in the decedent's blood was within therapeutic range and would not have contributed to the decedent's suicide. Yellin concluded, similar to Stripp, that "the Phenmetrazine, more likely than not, caused or contributed to the [decedent's] suicide," and that the Zolpidem prescribed by Jungman Suh did not cause or contribute to her suicide.
Yellin further opined that Jungman Suh's care and treatment of the decedent was not a proximate cause of the decedent's suicide based, inter alia, on the fact that the decedent was treated at Flushing Hospital by a psychiatrist on December 10, 2013, and by a social worker on December 13, 2013, who deemed the decedent a low risk for harm to herself. The decedent was thereafter treated in California on December 24, 2013, by a psychiatric nurse practitioner, who testified at her deposition that the decedent was "calm" and "quite stable" at that time. The psychiatric nurse practitioner gave the decedent prescriptions for Ambien, Lorazepam (Ativan), and Seroquel, which were filled on December 24, 2013, and the prescriptions for Ambien and Seroquel were refilled on December 28, 2013. Jungman Suh also submitted evidence showing that none of the five prescription bottles found at the scene of the decedent's suicide had been prescribed by him. The foregoing evidence was sufficient to establish, prima facie, that the alleged departures from accepted medical practice were not a proximate cause of the decedent's suicide (see Muth v Wali Mohammad, M.D., P.C., 132 AD3d 429, 430).
The plaintiffs' expert affidavit submitted in opposition to the motion was insufficient to raise a triable issue of fact (see Andreoni v Richmond, 82 AD3d 1139, 1140).
Accordingly, the Supreme Court should have granted Jungman Suh's motion for summary judgment dismissing the complaint insofar as asserted against him.
DILLON, J.P., MALTESE, WOOTEN and WARHIT, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court