A.A. v Maimonides Med. Ctr. (2025 NY Slip Op 50666(U))

[*1]

A.A. v Maimonides Med. Ctr.

2025 NY Slip Op 50666(U)

Decided on March 31, 2025

Supreme Court, Kings County

Frias-Colon, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 31, 2025
Supreme Court, Kings County

A.A., a minor, by her mother and natural guardian Hasina B. Runa and Hasina B. Runa, individually, PLAINTIFF,

against
Maimonides Medical Center and Dr. Matthew Silverman, DEFENDANTS.

Index No. 514143/2015

For Plaintiffs:
Perry Silver, Silver & Kelmachter LLP, 11 Park Place Suite 1503, New York, NY 10007, 212-661-8400, psilver&commat;silverkelmachter.com. 
For Defendant Maimonides Medical Center: 
Amelia Choyne, Aronson Rappaport Feinstein and Deutsch, LLP, 600 3rd Avenue, New York, NY 10016, 212-593-8058, archoyne&commat;arfdlaw.com. 
For Defendant Matthew Silverman:
Hillary Wallace, Yoeli Gottlieb & Etra, LLP, 260 Madison Avenue, New York, NY 10016, 212-472-7270, hwallace&commat;yogolaw.com.

Patria Frias-Colón, J.

Recitation as per CPLR §§ 2219(a) and/or 3212(b) of papers considered on review of this motion:
NYSCEF Doc. #s 50-66, 111 by Def. MMC
NYSCEF Doc. #s 67-83, 110 by Def. Silverman
NYSCEF Doc. #s 86-96, 97-107 by Plaintiffs
Upon the foregoing cited papers and after considering oral argument on February 25, 2025, pursuant to CPLR § 3212(b), the Decision, Order, and Judgment is as follows: [*2](1) Defendant Maimonides Medical Center's Motion for Summary Judgment is GRANTED; and (2) Defendant Dr. Matthew Silverman's Motion for Summary Judgment is also GRANTED.
Background
On September 16, 2014, at 5:10 p.m.[FN1]
, 32-year-old Plaintiff, Hasina B. Runa (the "mother"), gave an early-term birth [FN2]
to her third daughter, Infant Plaintiff A.A. (the "child"), at Defendant Maimonides Medical Center ("MMC"). Defendant physician Matthew Silverman, M.D., delivered the non-macrosomic baby girl vaginally with vacuum assistance. The child suffered an Erb's palsy/brachial plexus injury either before and/or during delivery. Nonparty Boro Park OB/GYN, in which Dr. Silverman was a partner, provided all of the mother's prenatal treatment up to the time of her emergency visit to MMC the morning of September 16, 2014 [FN3]
. On that day, Dr. Silverman was an attending obstetrician on duty at MMC for the Boro Park OB/GYN patients, including the mother [FN4]
.
The mother, individually and on behalf of the child, commenced this action against MMC and Dr. Silverman asserting claims sounding primarily in medical malpractice and lack of informed consent [FN5]
. Plaintiffs alleged that: (1) Dr. Silverman and MMC ("Defendants") failed to recommend to the mother to deliver the child by C-section, rather than vaginally with vacuum assistance; (2) the mother's pre-gestational diabetes, coupled with her obesity and weight gain during her pregnancy with the child, increased the likelihood that shoulder dystocia would be, and was, encountered during delivery; and (3) Dr. Silverman applied high-energy and/or misdirected forces on the child in the course of delivery [FN6]
. Plaintiffs further alleged that the permanent injuries suffered by the child (but ameliorated, to some extent, by two subsequent surgeries) could have been avoided if she had been delivered by C-section and earlier in the day [FN7]
.
After discovery was completed and a note of issue was filed, Defendants separately moved for summary judgment.
[*3]Standard of Review
"The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." Mendoza v Maimonides Med. Ctr., 203 AD3d 715, 716 (2d Dept. 2022) (internal quotation marks omitted). "To establish a cause of action to recover damages based on lack of informed consent, a plaintiff must prove (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury." Cox v Herzog, 192 AD3d 757, 758 (2d Dept. 2021) (internal quotation marks omitted). "On a motion for summary judgment dismissing the complaint in a medical malpractice action, the defendant doctor has the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby." Dye v Okon, 203 AD3d 702, 703 (2d Dept. 2022) (internal quotation marks omitted). "Where a defendant makes a prima facie showing on both elements, the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element." Sunshine v Berger, 214 AD3d 1020, 1022 (2d Dept. 2023) (internal citations omitted). "General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant physician's summary judgment motion." Simmons v Brooklyn Hosp. Ctr., 74 AD3d 1174, 1178 (2d Dept. 2010) (internal quotation marks omitted), lv denied 16 NY3d 707 (2011).
DISCUSSION
Dr. Silverman made a prima facie showing of his entitlement to judgment as a matter of law by submitting his deposition testimony [FN8]
, the mother's and the infant's respective medical records [FN9]
, and an expert affirmation from his own expert obstetrician [FN10]
(as well as a concurring expert affirmation from MMC's expert obstetrician [FN11]
) establishing that the mother's informed consent was properly obtained, that Dr. Silverman properly exercised his professional judgment in electing to proceed with a vaginal delivery (with a single-pull vacuum assistance) based on the information known to him at that time and did not depart from good and accepted standards of obstetrical practice in his care and treatment of the mother, and that, in any event, none of Dr. Silverman's alleged departures were a proximate cause of the child's injuries. See Gattling v [*4]Sisters of Charity Med. Ctr., 150 AD3d 701, 703 (2d Dept. 2017); Lau v Wan, 93 AD3d 763, 765 (2d Dept. 2012); see also Nestorowich v Ricotta, 97 NY2d 393, 398 (2002); Park v Kovachevich, 116 AD3d 182, 190 (1st Dept. 2014), lv denied 23 NY3d 906 (2014); Eckman v Cipolla, 77 AD3d 704, 705 (2d Dept. 2010).
In opposition, Plaintiffs' expert obstetrician failed to raise a triable issue of fact regarding whether the mother's informed consent was obtained or whether Dr. Silverman properly exercised his professional judgment in electing to pursue a vaginal delivery with vacuum assistance as the more expeditious way to deliver the child than a C-section when the fetal heart tracings became sufficiently non-reassuring to justify the need for urgent intervention [FN12]
. Furthermore, Plaintiffs' expert obstetrician failed to raise a triable issue of fact as to whether the care and treatment rendered by Dr. Silverman proximately caused the child's injuries. In that regard, Plaintiffs' expert obstetrician conceded that "the cause[s] of Erb[']s Palsy injuries are not always determined and have been said to occur without negligence"[FN13]
. Plaintiffs' expert obstetrician's conclusion that the infant sustained a brachial plexus injury because of Dr. Silverman's "excessive...and...forceful traction," as well as "excessive force,"[FN14]
was "improperly based on hindsight reasoning" Samer v Desai, 179 AD3d 860, 863 (2d Dept. 2020).
Plaintiffs' expert's reliance on the occasional episodes of the non-reassuring fetal heart-rate tracings before 4:40 p.m., as the basis for their opinion that a C-section was then warranted, was misplaced because the fetal heart-rate tracings subsequently recovered at 4:35 p.m [FN15]
. Plaintiffs' expert's alternative theory that the child's brachial plexus injury could have been avoided using an episiotomy [FN16]
was speculative and conclusory because they were unable to pinpoint whether the brachial plexus injury happened in utero before delivery, or ex utero during manual delivery. Under the totality of circumstances, Plaintiffs' expert affirmation was insufficient to raise a genuine issue of fact warranting a trial. See Gattling, 150 AD3d at 703; Lau, 93 AD3d at 765; Andreoni v Richmond, 82 AD3d 1139, 1140 (2d Dept. 2011); Ross v Braverman, 44 AD3d 923, 926 (2d Dept. 2007). Cf. Loaiza v Lam, 107 AD3d 951, 953-954 (2d Dept. 2013).
Separately, MMC made a prima facie showing of its entitlement of judgment as a matter of law by submitting the mother's deposition testimony [FN17]
as well as both Plaintiffs' respective [*5]medical records [FN18]
, and an expert affirmation establishing that its employees properly followed the orders and directives of Dr. Silverman who was the mother's private attending physician because of his coverage at MMC on the day in question [FN19]
. "In general, a hospital may not be held vicariously liable for the malpractice of a private attending physician who is not an employee, and may not be held concurrently liable unless its employees committed independent acts of negligence or the attending physician's orders were contraindicated by normal practice such that ordinary prudence required inquiry into the correctness of the same." Toth v Bloshinsky, 39 AD3d 848, 850 (2d Dept. 2007). MMC established its staff did not commit any independent acts of negligence, that Dr. Silverman's orders were not contraindicated by normal practice, and in any event, any alleged departures were not a proximate cause of the infant's injuries [FN20]
.
In opposition to MMC's prima facie showing, Plaintiffs failed to raise a triable issue of fact. See Gattling, 150 AD3d at 703-704; Smith v Agnant, 131 AD3d 463, 465 (2d Dept. 2015); Hoad v Dolkart, 127 AD3d 1310, 1314-1315 (3d Dept. 2015); Martinez v La Porta, 50 AD3d 976, 977 (2d Dept. 2008); Welch v Scheinfeld, 21 AD3d 802, 807 (1st Dept. 2005).
Accordingly, Defendants' motions for summary judgment are both granted and Plaintiffs' complaint is dismissed in its entirety with prejudice, and without costs and disbursements.
This constitutes the Decision, Order, and Judgment of the Court.
Date: March 31, 2025
Brooklyn, New York
Hon. Patria Frias-Colón, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc. # 82 at pg.75. 

Footnote 2:"Early term refers to neonates born at 37 completed weeks up to 386/7 weeks." F. Gary Cunningham, Williams Obstetrics, (24th ed. 2014), page 3 (Overview of Obstetrics) (emphasis omitted). See L.M. v Hamilton, 193 Wash. 2d 113, 121-122, 436 P.3d 803 (2019) (Williams was noted as "one of the preeminent textbooks on obstetrics" in a medical malpractice action involving brachial plexus injuries) (internal quotation marks omitted).

Footnote 3:NYSCEF Doc. #82.

Footnote 4:NYSCEF Doc. #71 at pg. 3 ¶ 4.

Footnote 5:NYSCEF Doc. #1 at ¶¶ 1-14 and 20-25. Plaintiffs also advanced (in ¶¶ 15-19 of the complaint) a separate cause of action to recover damages for the extraordinary costs of childcare.

Footnote 6:NYSCEF Doc. # 58 at ¶ 2.

Footnote 7:Id. at ¶ 18. 

Footnote 8:NYSCEF Doc. # 79.

Footnote 9:NYSCEF Doc. #s 82 and 83.

Footnote 10:NYSCEF Doc. # 71.

Footnote 11:NYSCEF Doc. # 52.

Footnote 12:NYSCEF Doc. #s 96 and 107, Plaintiffs' Expert Obstetrician's Affirmation, dated December 3, 2023 ("Plaintiffs' Expert Affirmation"). Plaintiffs separately filed the identical Expert Affirmation in opposition to each Motion.

Footnote 13:Id. at ¶ 50, footnote 13.

Footnote 14:Id. at ¶ 47.

Footnote 15:NYSCEF Doc. # 82, MMC's maternal chart, page 0100 (Progress Notes), entry at 4:35 p.m. (or 16:35 hours) by MMC's nurse Suet Than, R.N. ("FH [fetal heart-rate] tracing recovered.").

Footnote 16:NYSCEF Doc. # 96 at ¶ 46.

Footnote 17:NYSCEF Doc. #59.

Footnote 18:NYSCEF Doc. #s 65 and 66.

Footnote 19:NYSCEF Doc. #1 at pgs. 3-4.

Footnote 20:NYSCEF Doc.# 52 at ¶¶ 46-59.